1  SKAPIK LAW GROUP
   Mark J. Skapik (SBN 164957)
2  Email: mskapik@skapiklaw.com
   Geralyn L. Skapik (SBN 145055)
3  Email: gskapik@skapiklaw.com
   Blair J. Berkley (SBN 222293)
4  Email: bberkley@skapiklaw.com
   5861 Pine Avenue, Suite A-1
5  Chino Hills, California 91709
   Telephone:  (909) 398-4404
6  Facsimile:   (909) 398-1883

7  Attorneys for Plaintiffs ESTATE OF ROBERT V. SUTTON, by and through
   Montray Wilson; MONTRAY WILSON, SHARRON SUTTON, and JOYCE
8  EDMOND

9

10                    UNITED STATES DISTRICT COURT

11          CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

12  ESTATE OF ROBERT V. SUTTON, by        Case No.
    and through Montray Wilson;
13  MONTRAY WILSON, an individual;        **COMPLAINT FOR DAMAGES**
    SHARRON SUTTON, an individual; and
14                                           1. **Violation of Civil Rights (42**
    JOYCE EDMOND, an individual,              **U.S.C. §1983)**
15                                           2. **Failure to Train and Supervise,**
                 Plaintiffs,                    **Resulting in Constitutional**
16                                              **Violation (42 U.S.C. §1983)**
                                             3. **Policy, Custom, or Practice**
17               vs.                            **Causing Constitutional Violation**
                                                **(42 U.S.C. §1983)**
18  COUNTY OF SAN BERNARDINO;              4. **Negligence**
    SAN BERNARDINO COUNTY                   5. **Wrongful Death and Survival**
19  SHERIFF'S DEPARTMENT; SHERIFF             **Action**
    JOHN MCMAHON, individually and in     6. **Violation of California Civil**
20  his official capacity of Sheriff of San  **Code § 52.1**
    Bernardino County; PAUL WYNN,         7. **Cal Gov't Code § 845.6**
21  individually and in his official capacity 8. **Code of Civ. P. § 526 and 526(a)**
    and DOES 1 through 20, inclusive,
22
                 Defendants.               **DEMAND FOR JURY TRIAL**
23

24

25

26

27

28

PLAINTIFFS, MONTRAY WILSON, individually and as the Successor-in-interest to ESTATE OF ROBERT V. SUTTON; SHARRON SUTTON, and JOYCE EDMOND ALLEGE ("Plaintiffs"), for causes of action against Defendants COUNTY OF SAN BERNARDINO; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT; SHERIFF JOHN MCMAHON, individually and in his official capacity of Sheriff of San Bernardino County; PAUL WYNN, individually and in his official capacity and DOES 1 through 20, inclusive, allege as follows:

## GENERAL ALLEGATONS

1.      This is an action brought under 42 U.S.C. § 1983 to recover damages against Defendants for violation of Plaintiff's right against cruel and unusual punishment and right to due process, guaranteed under the Eighth and Fourteenth Amendments.

2.      The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1343.

3.      Plaintiffs ESTATE OF ROBERT V. SUTTON, by and through Montray Wilson, MONTRAY WILSON, SHARRON SUTTON, and JOYCE EDMOND are, and at all times mentioned in this complaint were, citizens of the United States and residents of San Bernardino County, California.

4.      Plaintiff MONTRAY WILSON is the natural born son of ROBERT V. SUTTON, the decedent. Plaintiff brings this suit pursuant to California Code of Civil Procedures §§ 377.30 and 377.60 on behalf of himself, individually, and as the successor in interest and personal representative of the estate of ROBERT V. SUTTON.

5.      Plaintiffs SHARRON SUTTON and JOYCE EDMOND are the natural born siblings of ROBERT V. SUTTON, the decedent.

6.      Defendant, COUNTY OF SAN BERNARDINO ("COUNTY") is a political subdivision duly organized and existing under the laws of the State of California.

7.      Defendant, SAN BERNARDINO SHERIFFS DEPARTMENT ("SBSD") is an agency of DEFENDANT COUNTY, and all actions of the SBSD are the legal

responsibility of the COUNTY.  These DEFENDANTS are sued in their own right for a
COUNTY and/or SBSD policy, practice or custom that caused Plaintiffs' injuries in
violation of one or more federal constitutional guarantees under 42 U.S.C. § 1983, as
well as on Plaintiffs' state law claims  for violation of California Civil Code § 52.1, Cal
Gov't Code § 845.6 and Code of Civ. P. § 526 and 526

8.     Defendant COUNTY oversees the operation of Defendant SBSD, who in
turn oversees the operation of the county jails within the County of San Bernardino.
Defendant COUNTY is sued both in its own right, and pursuant to California
Government Code § 815.2.

9.     Defendant SBSD is an agency of the COUNTY and is a public entity under
California law subject to suit per Federal Rule of Civil Procedure 17(b). Defendant
SBSD is sued both in its own right, and pursuant to California Government Code §
815.2, and mandatory duties under California Government Code § 815.6.

10.     Defendant COUNTY owns, operates, manages, directs, and controls
Defendant SBSD, also a separate public entity, which employs other Doe Defendants in
this action and exists in its entirety within the borders of Defendant COUNTY. Venue is
therefore proper under 28 U.S.C. § 1391(b).

11.     West Valley Detention Center Jail (hereinafter "WVDC") is a separate
public entity that is owned, operated, managed, directed, and controlled by Defendant
COUNTY, and which employs other Doe Defendants in this action and exists in its
entirety within the borders of Defendant County.

12.     Defendant JOHN MCMAHON ("MCMAHON") was and is the SBSD
Sheriff.  Plaintiffs are informed and believe, and thereupon allege, that at all times
relevant herein MCMAHON was responsible for the development, establishment and/or
implementation of the procedures, policies, regulations, practices and/or customs of the
SBSD with respect to its detention of prisoners.  By law, custom, and/or delegation, he
has policymaking authority over the jail for the actions at issue in this case. He is
responsible for ensuring that the policies and practices of the SBSD comply with federal

and state requirements for the treatment of Detainees and Inmates. Throughout the liability period, he has had personal knowledge that the practices challenged in this case were occurring on a routine basis. He is sued in his official and individual capacities as it relates to the application of the policies and procedures applied to mentally ill inmates and detainees. Upon information and belief, Plaintiffs further allege that, at all times relevant herein, MCMAHON participated in, approved, and/or ratified the unconstitutional or illegal acts complained of herein.  Plaintiffs sue MCMAHON in his individual capacity.  MCMAHON is also responsible for ensuring that the policies and practices comply with federal and state requirements for the treatment of Detainees  and Inmates and that they are properly implemented and followed by SBSD Jail Captain PAUL WYNN.

13.     Defendant Captain PAUL WYNN ("WYNN") was and is the SBSD Captain operating the WVDC located in San Bernardino County. Plaintiffs are informed and believe, and thereupon allege, that at all times relevant herein WYNN was responsible for the development, establishment and/or implementation of the procedures, policies, regulations, practices and/or customs of the SBSD with respect to its detention of Detainees  and Inmates at the WVDC.  WVDC is one of the largest county jails in the State of California.  With a bed capacity of 3,347, WVDC completes 50,000 to 60,000 bookings and releases each year.  By law, custom, and/or delegation, he has policymaking authority over the jail for the actions at issue in this case. He is responsible for ensuring that the policies and practices of the WVDC comply with federal and state requirements for the treatment of Mentally Ill Detainees and Inmates. At the time of SUTTON'S death, WYNN had personal knowledge that the practices challenged in this case were occurring on a routine basis. He is sued in his official and individual capacities for failing to implement the policies and procedures for housing mentally ill inmates. Upon information and belief, Plaintiffs further allege that, at all times relevant herein, WYNN participated in, approved, and/or ratified the unconstitutional or illegal acts complained of herein.

14.     The true names and capacities of Defendants sued herein as DOES 1-20 ("Doe Defendants") are law enforcement officers, deputies, sheriffs, medical providers, custody staff, civilian employees, agents, and/or employees of Defendants COUNTY, SBSD, and/or WVDC and are unknown to Plaintiffs, who therefore sue said Doe Defendants by such fictitious names. Upon learning their nexus to this incident and their true identity, Plaintiffs will move to amend this Complaint to show their true names and capacities.

15.     Doe Defendants were at all times mentioned herein, law enforcement officers, deputies, sheriffs, custody staff, civilian staff, medical providers, and/or employees/agents of COUNTY, SBSD, and/or WVDC, and all times acted within the course and scope of that relationship. The reason why Plaintiffs are ignorant of the true names and capacities of Doe Defendants is that they have been unascertainable as of the date of the filing of the instant Complaint, as many of these Doe Defendants may be law enforcement officers, civilian employee agents, medical staff, doctors or nurses, policy makers and representatives of COUNTY, SBSD, and/or WVDC, and as such, many of their records are protected by state statute and can only reasonably be ascertained through the discovery process.

16.     The events giving rise to this action occurred in San Bernardino County, California. Venue is therefore proper under 28 U.S.C. § 1391(b).

17.     Defendants, Does inclusive, were at all times mentioned in this complaint agents of the State of California, employed within the Sheriff's Department of the County of San Bernardino, or as a corrections officer within the West Valley Detention Center Jail.

18.     Defendants, Does inclusive, were, at all times mentioned in this complaint, acting in the course and scope of their employment or governing roles with the State of California, Defendant COUNTY and Defendant SBSD.

19.     Defendants, Does inclusive, were, at all times mentioned in this complaint, acting under color of state law.

1

**JURISDICTION AND VENUE**

2      20.   The Court has jurisdiction over Plaintiffs Title 42, sections 1983 and 1988,

3   claims pursuant to Title 28 U.S.C. sections 1331 and 1343.  The Court has supplemental

4   jurisdiction over Plaintiff's state-law claims.

5      21.   Venue is proper in the Central District of California under 28 U.S.C. section

6   1391(b) because Plaintiff's claims arise out of the acts of the San Bernardino Sheriff's

7   Department in the County of San Bernardino, State of California.

8

**PRESENTATION OF WRITTEN CLAIM**

9      22.   Plaintiffs timely and properly filed tort claims pursuant to *Cal. Gov. Code* §

10   910 et seq. on September 3, 2019, Defendants denied the claim on September 25, 2019,

11   and Plaintiffs have complied with the state claims statute and as to all state claims;

12   therefore, this action is timely filed in accord with state law.

13

**STATEMENT OF FACTS**

14      23.   ROBERT V. SUTTON (hereinafter "SUTTON" or "DECEDENT") was a

15   mentally impaired man who was incarcerated and was being housed under Defendants

16   care and custody.

17      24.   SUTTON experienced a mental impairment which made him extremely

18   adverse to physical contact from other human beings.

19      25.   SUTTON had spent most of his incarnation at Patton State Hospital.

20      26.   SUTTON was transferred from Patton State Hospital to WVDC on or

21   about February 1, 2019, where he was waiting to be assigned and released to a

22   transitional housing facility.

23      27.   Defendants were advised that SUTTON had mental impairments and were

24   further instructed to house SUTTON away from other inmates during the period of time

25   he was housed at  WEST VALLEY and waiting for  his transitional housing assignment.

26   As a result of his mental impairment, SUTTON was designated to have his own cell

27   while incarcerated at WEST VALLEY.

28   ///

28.    SUTTON was placed in a cell in Unit 1, at WEST VALLEY.

29.    On March 3, 2019, LAGER GEORGE REID (REID) was arrested for Battery and Serious Bodily Injury and booked into the High Desert Detention Center. On that same day, REID was transported to Victor Valley Hospital where he attacked a nurse.  REID was then transferred to WEST VALLEY DETENTION CENTER into DEFENDANTS custody.

30.    On March 5, 2019, REID was assigned to share a cell with the DECEDENT in Unit 1.

31.    Plaintiffs are informed and, on that bases, allege that REID is a vicious and violent criminal.

32.    REID, at first, refused to enter the cell because he "did not like the look of" the DECEDENT.

33.    Defendants, Does inclusive, knew or should have known at that time that REID was a violent inmate who had a history of violent conduct and offenses, and to whom violence came easily.

34.    Defendants, Does inclusive, knew or should have known at that time that SUTTON was to be housed in a single cell due to his mental illness and not to be housed with another inmate, especially an inmate who had a history of violent conduct and offenses, and who was known to be violent at that time, having just performed violence on the nurse who had treated him for his injuries.

35.    Defendants and Does inclusive, knew or should have known at that time that REID was a violent inmate who had a history of violent conduct and offenses, and to whom violence came easily, and who therefore should have been housed in a single cell to prevent violence upon another inmate.

36.    Sometime later, on the same day, a commotion arose within the cell of Unit 1, which housed SUTTON and REID. Upon investigation, the DECEDENT was discovered bloody and battered. His shirt was pulled over his face, there was a shoe

///

print on the left side of his head, and he had suffered a gratuitous number of injuries including but not limited to lacerations, bruises, broken bones, and a crushed lung.

37.  Defendant Deputies entered the cell and rendered emergency lifesaving measures.

38.  SUTTON was transported to a local area hospital.

39.  SUTTON ultimately died as a result of the injuries sustained from REID.

40.  At the time of the incident, the cell was locked, with only DECEDENT and REID inside.

41.  On information and belief, REID has since been charged with the murder of SUTTON .

## FIRST CAUSE OF ACTION
### Violation of Civil Rights (42 U.S.C. § 1983)
(By All Plaintiffs Against All Defendants, Does Inclusive)

42.  Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

43.  This action is brought under 42 U.S.C. §1983 and on the Eighth Amendment of the United States Constitution and pursuant to the general laws of the State of California. Plaintiffs allege that the conduct of each Defendant, Does inclusive, in their own separate capacity, deprived SUTTON of his constitutional rights and caused him to suffer grievous harm and physical injuries, resulting ultimately in death, while in the custody of Defendants, Does inclusive.

44.  As a direct and proximate result of Defendants' actions described in this complaint, SUTTON was subjected to and did in fact suffer cruel and unusual punishment and physical pain, anguish, and distress, ultimately culminating in his death. Plaintiffs MONTRAY WILSON, SHARRON SUTTON, and JOYCE EDMOND were deprived of their constitutional rights to familial relationship.

///

///

45.    The Estate of ROBERT V. SUTTON claims damages as a survivor action under the federal law and claims as damages for the loss of his right to life and of the injuries, pain, and emotional anguish and trauma he suffered prior to his death.

46.    As a legal cause of Defendants', Does inclusive, actions and/or inactions and deliberate indifference to the constitutional rights of Plaintiffs, MONTRAY WILSON, SHARRON SUTTON, and JOYCE EDMOND suffered loss of society, comfort, companionship, solace, assistance, love, affection, financial support, and incurred burial and funeral expenses, and suffered and continue to suffer these damages. In acting as is alleged in this complaint, Defendants each acted knowingly, willfully, and maliciously, and with reckless and callous disregard for SUTTON's federally protected rights.

## SECOND CAUSE OF ACTION
### Failure to Train and Supervise, Resulting in Constitutional Violation
### (42 U.S.C. §1983)

(By All Plaintiffs Against All Defendants, Doe Defendant inclusive)

47.    Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

48.    Plaintiffs allege that Defendant MCMAHON is and was at all times relevant to this complaint a decision maker for both Defendants COUNTY and SBSD

49.    Plaintiffs allege that Defendant MCMAHON is and was at all times relevant to this complaint a supervisor of the employees of his department.

50.    Plaintiff alleges that Defendant MCMAHON knew or should have known, by virtue of previous inmate complaints, legal actions, and other communications and court filings, including the Federal Consent Decree, of the propensity of members of his Sheriff's department, including but not necessarily limited to the individual Defendants in this lawsuit, of their failure to provide constitutional medical, dental and mental health care, to ensure non-discrimination of inmates with disabilities and to address uses of force and restrictive housing in the San Bernardino County Jails.

51.     Plaintiffs allege that Defendant MCMAHON'S decisions not to instigate proper training and supervision to alleviate the aforementioned conditions and not to instigate proper training in accordance with the mandates of the Federal Consent Decree, despite knowing that he was required to do so as so mandated by the Federal Consent Decree, constituted deliberate indifference to the problems outlined in the Federal Consent Decree and displays a lack of proper supervision.

52.     Defendants knew or should have known that SUTTON experienced a mental impairment which made him extremely adverse to physical contact from other human beings.

53.     Defendants knew or should have known that SUTTON had spent most of his incarceration at Patton State Hospital.

54.     Defendants knew or should have known that SUTTON was transferred from Patton State Hospital to WEST VALLEY on or about February 1, 2019, where he was waiting to be assigned and released to a transitional housing facility.

55.     Defendants were advised that SUTTON had mental impairments and was instructed to house SUTTON without other inmates during his transition from WEST VALLEY to a transitional housing facility. As a result of this mental impairment, SUTTON was designated to have his own cell while incarcerated at WEST VALLEY.

56.     Defendants knew that REID was arrested for Battery and Serious Bodily Injury and booked into the High Desert Detention Center.

57.     Defendants knew or should have known that on that same day, REID was transported to Victor Valley Hospital where he attacked a nurse.

58.      Defendants knew or should have known that placing REID in the same cell as SUTTON was in violation of SUTTON'S medical directive which was to be housed in a single cell due to his mental health disability.

59.     Defendants knew or should have known that REID was a vicious and violent criminal and should not have been placed with SUTTON.

///

60.     Defendants knew or should have known that REID's vicious and violent propensity placed SUTTON in unsafe surroundings, exposing SUTTON to violence or death.

61.     In fact, REID did commit acts of unspeakable violence on SUTTON, including beating him, the breaking of SUTTON'S bones, REID crushing SUTTON'S head with REID's foot, SUTTON'S lungs being crushed to a point where SUTTON was rendered unconscious, and eventual death due to the injuries inflicted by REID.

62.     Defendants knew or should have known that placing REID in the same cell as SUTTON exposed SUTTON to extreme and immediate danger in conscious disregard to SUTTON'S well-being and mental state.

63.     Defendants knew or should have known that by placing REID in the same cell as SUTTON, Defendants violated the Federal Consent Decree's provision to ensure SUTTON of his constitutional rights to mental health care and treatment and to the implementation of the safeguards set forth under of Section II, Mental Health Care of the Federal Consent Decree.

64.     Plaintiffs allege that Defendant MCMAHON'S failure to ensure that his department complied with the Federal Consent Decree constituted deliberate indifference to the problems complained of in this matter and a lack of proper supervision.

65.     Plaintiffs allege that Defendant WYNN was the on-scene supervisor, and that he inadequately and/or improperly thru malice, or reckless disregard, or negligence in his supervision directed or allowed his subordinates to  violate the civil rights of the Plaintiff SUTTON.

66.     Defendant MCMAHON'S deliberate indifference and failure to properly train and supervise his subordinates was a proximate cause of damage and harm to Plaintiffs, and proximately caused physical, mental, emotional injury, and  death of SUTTON.

///

**THIRD CASUE OF ACTION**

**Policy, Custom, or Practice Causing Constitutional Violation and**

**Failure to comply with the Consent Decree ordered by the**

**Honorable Virginia A. Phillips**

**(42 U.S.C. § 1983)**

(By All Plaintiffs Against All Defendants, Doe Defendants Inclusive)

67.    Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

68.    Previous incidents and lawsuits involving the mistreatment and mishandling of inmates at WVDC gave Defendants ample warning that there were systematic and continuous policies and practices that allowed for such mistreatment.

69.    In 2014, the class-action lawsuit *McKibben v. McMahon*, Case No. 14-2171-JGB-SP was filed and eventually settled. That lawsuit described a consistent culture of discrimination of gay, mentally ill, bisexual, and transsexual inmates at the West Valley Detention Center for a period from 2012 through 2018. Ultimately this lawsuit was settled in favor of the Plaintiff Class.

70.    On February 29, 2016, *George Topete and Zachery Shovey v. County of San Bernardino*, Case No. 5:16-CV-00355 was filed. Another class action, this case alleged continuous and systematic discrimination against disabled inmates at West Valley Detention Center. Mr. Topete was a physically disabled inmate who required specific accommodations to assist him in day-to-day activities, and was systematically denied these accommodations. Mr. Shovey was a mentally impaired inmate at West Valley who was systematically denied mental health treatment and medications for one year after he was booked at West Valley, despite an obvious need for such treatment and medications.

71.    On December 10, 2015, Johnny Alcala, representing a class of plaintiffs, filed a class action lawsuit, Case No. 5:15-CV-02515, against Defendants COUNTY, SBSD, MCMAHON, and many others alleging a pattern of abuse by deputies and

outlining a "culture of violence" that permeated West Valley Detention Center. The complaint alleged multiple incidents of taser gun torture, sexual battery, and denial of medical care for inmates by multiple deputies. No steps were taken to remedy these obvious civil rights violations until after this lawsuit and others brought the public eye onto West Valley Detention Center.

72.     On December 10, 2015, David Smith filed a lawsuit, Case No. 5:15-CV-02513, against Defendants County, SBSD, MCMAHON, and many others alleging a similar pattern of abuse by deputies and shedding further light on the "culture of violence" that permeated West Valley Detention Center. Smith alleged in his complaint that he was subjected to unjust and unreasonable Taser stuns for a period of five years prior to being transferred out of WVDC.

73.     On December 14, 2018, the Honorable Virginia A. Phillips executed the Consent Decree issued in *Rahshun Turner v. County of San Bernardino*, Case No. 5:16-CV-00355-VAP (DTBx) (Consent Decree)

74.     The Section I F. Death Review Process of the Consent Decree requires, among other mandates, that Defendants comply with NCCHC standard J-A-10, the "Procedure in the Event of an Inmate Death," which provides that all In-custody deaths are to be reviewed to determine the appropriateness of clinical care; to ascertain whether changes to policies, procedures, or practices are warranted; and to identify issues that require further study.

75.     Pursuant to this policy, procedure and practice, all deaths shall be reviewed within 30 days with the information then available and again when the Coroner's report is available.

76.     Pursuant to this policy, procedure and practice, the death review shall consist of an administrative review, a clinical mortality review, and a psychological autopsy if death is by suicide, and a written report shall be prepared.

77.     Pursuant to the policy, procedure and practice, corrective actions identified through the mortality review process shall be implemented and monitored through the

1  facility's CQI program for systemic issues, and through the staff education program for
2  staff related issues.

3  78.    On the day of his assault, SUTTON was an inmate in Defendants care and
4  custody, was an individual to which the Consent Decree applied and was an individual
5  for which the Consent Decree was implemented so as to protect his health, safety and
6  welfare.

7  79.    Defendants were advised  and aware that SUTTON was transferred from
8  Patton State Hospital where he spent most of his incarceration, on or about February 1,
9  2019,  while he was waiting to be assigned and released to a transitional housing
10  facility.

11  80.    Defendants were advised and aware that SUTTON experienced a mental
12  impairment which made him extremely adverse to physical contact from other human
13  beings.

14  81.    On or about March 5, 2019, Defendants placed vicious criminal REID in
15  the same cell as mentally impaired SUTTON.

16  82.    Defendants were advised and aware that SUTTON was to be housed in a
17  single inmate cell due to his mental illness and was not to be housed with other inmates.

18  83.    On or about March 5, 2019, REID viciously, savagely and brutally beat
19  SUTTON.

20  84.    SUTTON was taken to a local hospital where he succumbed to his injuries.

21  85.    Plaintiffs believe and therefore allege that as of the date of the filing of this
22  compliant, Defendants, inclusive of Does, have failed to perform the mandated Death
23  Review Process as so mandated by the Consent Decree, specifically Section I F.

24  86.    Plaintiffs believe and therefore alleges that as of the date of the filing of
25  this complaint,  SUTTON's death was not reviewed within 30 days with the information
26  then available and again when the Coroner's report was available, in violation of the
27  Consent Decree mandates.

28  ///

87.     Plaintiffs believe, and therefore allege, that as of the date of the filing of this complaint no review of SUTTON's death consisting of an administrative review, a clinical mortality review, and a psychological autopsy if death is by suicide, or a written report was prepared, in violation of the Consent Decree mandates

88.     Plaintiffs believe, and therefore allege, that as of the date of the filing of this complaint, and  pursuant to the policy, procedure and practice, no corrective actions were identified through the mortality review process, as there was no mortality review process, thus there could be nothing implemented and monitored through the facility's CQI program for systemic issues, and presented to the staff through the staff education program for staff related issues as so mandated by the Consent Decree.

89.      Plaintiffs allege that Defendants, inclusive of DOE Defendants, had and has a policy, custom or procedure of failing to ensure the provision of constitutional medical, dental and mental health care, to ensure non-discrimination of inmates with disabilities and to address use of force and restrictive housing in the San Bernardino County Jails. This policy and custom was a substantial factor of the federal court's Consent Decree, and the reason the Consent Decree was implemented.   Defendants are still not in compliance with the Federal Court's Consent Decree.

90.     Defendants, inclusive of DOE Defendants, unconstitutional customs, policies, practices or procedures are a proximate cause of the Plaintiffs' injuries as set forth in this complaint.

## **FOURTH CAUSE OF ACTION**
### **Negligence**

(By All Plaintiffs Against All Defendants, Doe Defendants Inclusive)

91.     Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

92.     On or about March 5, 2019, while in a cell in Unit 1 at WEST VALLEY, due to the negligence of each Defendant, Does inclusive, SUTTON was violently attacked by REID .

93.     Each Defendant, Does inclusive, was negligent in the performance of his/her custody deputy tactics and duties and this negligence was a cause of Plaintiffs' injuries and damages. Defendants, Does inclusive, failed to comply with their above stated custody tactics and duties and their conduct was at all times mentioned herein below the standard of care required of their positions.

94.     Defendants, Does inclusive, knew or should have known that by placing a vicious and violent criminal such as REID in a cell with SUTTON, that such placement could cause serious bodily injury and possible death to SUTTON.

95.     Defendants knew or should have known that pursuant to the Federal Consent Decree and SUTTON'S medical condition, as so documented in his medical records, that housing anyone with SUTTON was in contradiction to his mental health diagnosis and was in violation of SUTTON's treatment plan and jeopardized SUTTON's physical and mental safety and security.

96.     By failing to conduct themselves at the very least to the standard of care required of their position, Defendants, Does inclusive, breached the duty owed to SUTTON and to Plaintiffs by negligently allowing the death of SUTTON while he was under the care and protection of Defendants, Does inclusive.

97.     As a direct and legal result of aforesaid negligence of Defendants, Does inclusive, Plaintiffs were injured, and have suffered damages.

## FIFTH CAUSE OF ACTION

### Wrongful Death and Survival Action

(By All Plaintiffs Against All Defendants, Doe Defendants Inclusive)

98.     Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

99.     Defendants, Does inclusive, were required by law to be responsible for DECEDENT's physical safety, to prevent risk that was known to them, and to properly house and classify DECEDENT to protect him.

///

100.   Defendants, Does inclusive, knew or should have known that REID had been arrested and charged with a violent crime, that REID had just attacked a nurse that was rendering him aid at a local hospital before being transferred to the West Valley jail, that REID had a penchant for violence, and that, if given the opportunity, REID would commit violence against those around him.

101.   Further, Defendants, Does inclusive, knew or should have known that DECEDENT suffered from a serious mental health condition, and that DECEDENT was classified as such and was supposed to be housed alone so as to better treat his mental health condition.

102.   Defendants, Does inclusive, were deliberately indifferent to and/or showed a reckless disregard of the reasonably foreseeable serious risk of harm to DECEDENT at the hands of REID, and as such failed to prevent that reasonably foreseeable harm.

103.   Defendants, Does inclusive, failed to protect DECEDENT from the foreseeable harm and failed to timely intervene to provide reasonable security, monitoring and safety, which were necessary to prevent the injuries caused by REID to DECEDENT on March 5, 2019, those injuries ultimately being the cause of DECEDENT's untimely death.

104.   These failures by Defendants, Does inclusive, are the legal and proximate cause of DECEDENT's death on March 5, 2019.

105.   DECEDENT was deprived of his rights by Defendants, Does inclusive. Each of them, acting under color of law, deprived DECEDENT of his rights under the statutes, ordinances, regulations, customs and usages of the State of California, which rights included, but are not limited to, (a) his right to access mental health and medical care and treatment for his serious but treatable condition; (b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for his mental health; (c) his right to be protected from harm by other inmates and (d) the rights assured to him under the Federal Consent Decree.

///

106.   As a direct and proximate result of the foregoing deliberate indifference on the part of Defendants acting under color of law, SUTTON suffered lost earnings, serious physical injury, endured great pain and suffering, consciousness of his own impending death, and death.

107.   As a direct and proximate result, Plaintiff MONTRAY WILSON, as successor in interest and personal representative of SUTTON, as well as personally and individually, has suffered damages, anguish, loss of life, and deprivation of SUTTON's Constitutional rights, under the Constitutions of the United States and of California, in an amount not yet ascertained but to be proven.

108.   As a direct and proximate result of the foregoing deliberate indifference on the part of Defendants acting under color of law, Plaintiffs SHARRON SUTTON and JOYCE EDMOND, siblings of SUTTON, and Plaintiff MONTRAY WILSON, SUTTON'S son, have suffered damages, pain and suffering, anguish and depression, loss of affection, society, service, comfort, support, right of support, expectation of further support and counseling, companionship, solace, and mental support, loss of assistance, loss of life, lost earnings, and loss of earning capacity of SUTTON, and deprivation of SUTTON's Constitutional rights, under the Constitutions of the United States and of California, in an amount not yet ascertained but to be proven.

109.   As a direct and proximate result of the foregoing deliberate indifference on the part of Defendants acting under color of law, Plaintiffs SHARRON SUTTON and JOYCE EDMOND, siblings of SUTTON, and Plaintiff MONTRAY WILSON, SUTTON'S son, have incurred funeral and burial expenses.

110.   Defendants, Does inclusive, acted willfully, wantonly, maliciously, and oppressively, and therefore punitive damages should be assessed against them in an amount to be determined at trial.

///

///

///

## SIXTH CAUSE OF ACTION

### Violation of California Civil Code § 52.1

(By All Plaintiffs Against All Defendants, Doe Defendants Inclusive)

111.   Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

112.   The California Constitution guarantees inmates the right to adequate medical care and protection from harm.

113.   The Federal Consent Decree entered into by Defendants, guarantee inmates the right to adequate mental medical care and protection from harm.

114.   Defendants, Does inclusive, denied these rights to SUTTON. Defendants, Does inclusive, prevented SUTTON by threats, intimidation, force, and coercion from receiving and implementing the proper mental health care to which he was entitled under the California Constitution.

115.   Defendants, Does inclusive, violated SUTTON's constitutional rights when they failed to properly house him and failed to properly classify him as a mentally ill inmate, when he had been specifically designated as such with specific accommodations supposed to be implemented due to that designation.

116.   As a result of their conduct, Defendants, Does inclusive, are liable for Plaintiffs' injuries  and ultimate death as set forth in the preceding paragraphs, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

117.   Defendants, Does inclusive, acted willfully, wantonly, maliciously, and oppressively, and therefore punitive damages should be assessed against them in an amount to be determined at trial.

///

///

///

///

## SEVENTH CAUSE OF ACTION
### Cal Gov't Code § 845.6

(By All Plaintiffs Against All Defendants, Doe Defendants Inclusive)

118.   Plaintiffs incorporate by reference the above paragraphs as though fully set forth herein.

119.   Defendants, Does inclusive, were aware of SUTTON'S mental state. Defendants, Does inclusive, were further aware of REID's capacity and penchant for violence. Nevertheless, Defendants, Does inclusive, either directly or through a failure to properly accommodate SUTTON, failed to follow those accommodations and placed a known violent criminal in a cell with a mentally ill inmate who was specifically identified as an inmate who could not receive a cellmate. This blatant disregard for the specifically recommended accommodations for SUTTON, and the placement of REID into SUTTON's cell, proximately caused the death of SUTTON.

120.   Defendants, Does inclusive, knew or had reason to know that SUTTON was mentally ill and required special accommodations within WVDC. SUTTON had serious and obvious mental conditions that were apparent to medical staff and about which Defendants, Does inclusive, had been informed. Nevertheless, Defendants, Does inclusive, failed to provide SUTTON with the necessary care and accommodations to prevent his death at the hands of REID. This failure proximately caused SUTTON's death.

## EIGHTH CAUSE OF ACTION
### Code of Civ P. §§ 526 and 526(a)

(By All Plaintiffs Against All Defendants, Doe Defendants Inclusive)

121.   Plaintiffs incorporate by reference herein the above paragraphs as though fully set forth herein.

122.   Defendants' expenditure of taxpayer funds for the execution of the negligent policies and practices complained of herein is wasteful, illegal and unlawful. Plaintiffs have an interest in enjoining these unlawful and wasteful expenditures as

taxpayers to the State, County and City. Plaintiff has an interest in preventing any future similarly wasteful and unlawful expenditures of taxpayer monies.

123.   Plaintiffs have lived and worked in the County of San Bernardino, and have paid sales and income taxes in the County of San Bernardino, for many years.

124.   Pursuant to Code of o Civil Procedure §§ 526 and 526(a), the Plaintiffs, as taxpayers, seek declaratory and injunctive relief to prevent continued harm and to protect the public from the Defendants', Does inclusive, unlawful policies and practices.

125.   Absent relief from this Court, the public will suffer irreparable injury in that Defendants' negligent failures to monitor and treat inmates with mental health conditions in the manner which has been prescribed by health professionals.

126.   Absent relief from this Court, the public will suffer irreparable injury in that Defendants' negligent failures to implement the Federal Consent Decree.

127.   Plaintiffs have no other speedy or adequate remedy at law to ensure that their tax dollars are not used illegally and wastefully to mistreat inmates and to pay deputies who are negligent and not doing their jobs properly.

128.   Accordingly, Plaintiff requests the following declaratory and injunctive relief against Defendant COUNTY:

129.   A preliminary and permanent injunction requiring the Sheriff's Department to provide additional training to all deputies working in the San Bernardino County Jails about how to monitor and care for persons already identified as mentally ill.

130.   A preliminary and permanent injunction requiring the Sheriff's department to provide the additional training to all deputies working in the San Bernardino County Jails about how to identify persons with mental health crises.

131.   A preliminary and permanent injunction requiring the Sheriff's department to provide training on the implementation of the Federal Consent Decree and to mandate that the Federal Consent Decree be in fact implemented and obeyed.

///

///

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS, MONTRAY WILSON, individually and as the Successor-in-interest to ESTATE OF ROBERT V. SUTTON; SHARRON SUTTON, and JOYCE EDMOND pray judgment against all Defendants as follows:

1. For non-economic damages suffered by Plaintiffs MONTRAY WILSON, SHARRON SUTTON, and JOYCE EDMOND , including but not limited to loss of love, affection, care, society, service, comfort, support, right to support, companionship, solace or moral support, expectations of future support and counseling, other benefits and assistance of Decedent SUTTON, an amount in excess of the jurisdictional minimum, according to proof;

2. For economic damages suffered by Plaintiffs MONTRAY WILSON, SHARRON SUTTON, and JOYCE EDMOND related to loss of earnings and loss of financial support from Decedent SUTTON, according to proof;

3. For funeral and burial expenses suffered by Plaintiffs MONTRAY WILSON, SHARRON SUTTON, and JOYCE EDMOND;

4. For pain and suffering, mental anguish, loss of income, medical expenses, incidental expenses incurred and suffered by decedent SUTTON;

5. For punitive damages, in an amount to be determined according to proof at trial;

6. For prejudgment and post judgment interest, according to proof;

7. For reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

8. For costs of suit incurred in this action; and

9. For such other and further relief as the Court deems proper.

1 | DATED:  March 2, 2020
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SKAPIK LAW GROUP


By: _____
       Mark J. Skapik
       Geralyn L. Skapik
       Blair J. Berkley
       Attorneys for Plaintiffs

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs demand trial by jury on all issues so triable.

3

4  DATED:  March 2, 2020                           SKAPIK LAW GROUP

5

6                                                                    By:  _____

7                                                                          Mark J. Skapik
                                                                             Geralyn L. Skapik
8                                                                          Blair J. Berkley
                                                                             Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT